E-FILED
Wednesday, 07 October, 2026 01:27:09 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURTS**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| **EVAN NORBERG,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 26-4221-SEM-DJQ** |
| | ) | |
| **ROB VALLEDARRAS, *et al.*,** | ) | |
| **Defendants.** | ) | |

# ORDER

**SUE E. MYERSCOUGH, United States District Judge:**

Plaintiff Evan Norberg, proceeding *pro se* and currently in custody at the Rock Island Jail, filed a Complaint (#1) on September 11, 2026. The Complaint alleges that Plaintiff received inadequate medical care after breaking his foot in an altercation at the Jail in March 2025. Plaintiff names as Defendants: correctional officers Rob Valledarras, Christopher Young, Thomas, Watson, Alvarez, and Captain Holden, and nurses Mandy, Stacy, Hannah, and Alyssa. The Court granted Plaintiff leave to proceed *in forma pauperis*, and the case is now before the Court for a merit review of his claims.

## BACKGROUND

On March 9, 2025, Plaintiff engaged in an argument with another inmate at the Jail. The argument escalated, and the other inmate attacked Plaintiff. As a result of the altercation, Plaintiff's foot was broken in three places.

Plaintiff alleges that no correctional officer protected him from the altercation. He specifies that Thomas, Alvarez, Watson, Valledarras, and Young "are at fault for failing to protect me from the attack that could have been avoided."

In the immediate aftermath of the altercation, Plaintiff was taken to Trinity Hospital for x-rays. The doctor at Trinity told Plaintiff that his foot was not broken. Plaintiff was provided with a walking boot. Approximately a week later, Plaintiff saw Dr. Dory, the Jail doctor. Dr. Dory examined Plaintiff and told him that his foot was not broken.

Two weeks later, Plaintiff told nurses Mandy, Stacy, and Hannah that he was in pain and it was difficult for him to walk. He asked if he could get crutches or a wheelchair, but they refused.

Two months after that—around May 30, 2025, according to

Plaintiff's timeline—Plaintiff was seen by an orthopedic specialist. The specialist told Plaintiff that his foot was broken in three places, his Lisfranc ligament was torn, and he would require surgery.

Plaintiff expected that his surgery would be approved quickly, but, in his estimation, that was not the case. He had surgery on his foot on August 9, 2025.

**Analysis**

Request for Counsel

Plaintiff has filed a Motion to Request Counsel (#4). In determining whether the Court should attempt to find an attorney to voluntarily take a case, the Court asks: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff does not state that he has made any attempts to obtain counsel and does not assert that he has been precluded from doing so. A plaintiff's failure to "show the district court that he tried to obtain counsel on his own" is "reason enough to deny the request" for

counsel. *Rivera v. Jimenez*, 556 F. App'x 505, 507 (7th Cir. 2014). Accordingly, Plaintiff's Motion to Request Counsel (#4) is DENIED.

Merit Review

Pursuant to 28 U.S.C. § 1915A, the Court must "screen" Plaintiff's complaint and, through such process, identify and dismiss any legally insufficient claim or the entire action if warranted. A claim is defective if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A. In reviewing a complaint, the Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

At the time of the events in question, Plaintiff was a pretrial detainee. Accordingly, his claims fall under the Fourteenth Amendment, rather than the Eighth Amendment. *Pittman by &*

*through Hamilton v. Madison Cnty., Illinois*, 108 F.4th 561, 566 (7th Cir. 2024). The touchstone for all Fourteenth Amendment claims is objective reasonableness. *Id.* at 567.

Plaintiff has stated a claim for objectively unreasonable medical care, in violation of the Fourteenth Amendment, against nurses Mandy, Stacy, and Hannah. He alleges that it was painful for him to walk, so he requested crutches or a wheelchair, but the nurses declined. This plausibly describes objective unreasonableness. Plaintiff may also proceed on his state law negligence claims against the same Defendants.

Plaintiff has not stated any claim against Dr. Dory. The only conduct attributed to Dr. Dory is that he or she opined, incorrectly, that Plaintiff's foot was not broken. But a misdiagnosis, without more, simply does not rise to the level of a constitutional violation, even under the Fourteenth Amendment standard. *See Gullo v. Sauk Cnty. Jail Med.*, 2021 WL 1564464, at *2 (W.D. Wis. Apr. 21, 2021) (finding allegation of misdiagnosis insufficient to state a Fourteenth Amendment claim and collecting cases).

While Plaintiff expresses his intent to also bring a state law

claim for "medical negligence [or] malpractice" against Dr. Dory, the Court finds that he has not sufficiently stated that claim either. Under Illinois law, "[m]ere proof that the defendant doctor made a mistake or that his treatment harmed plaintiff is no evidence of lack of skill or negligence." *Ford-Sholebo v. United States*, 980 F. Supp. 2d 917, 988 (N.D. Ill. 2013) (cleaned up); see also *Gray v. United States*, 2010 WL 1540117, at *3 (N.D.Ill. Apr. 11, 2010) ("[I]t is not enough to show that the physician made a mistake or that the plaintiff suffered harm because of the physician's mistake."). "Where there is admittedly a misdiagnosis, the question remains as to whether such misdiagnosis was the exercise of a reasonable medical judgment or a judgment arrived at without the exercise of appropriate care." *Cummings v. Jha*, 915 N.E.2d 908, 920 (Ill. App. Ct. 2009) (cleaned up).

Plaintiff has alleged that a doctor at Trinity Hospital reviewed Plaintiff's x-rays and reached the conclusion that his foot was not broken. Dr. Dory reached the same conclusion a week later. Dr. Dory's conclusion is, at most, consistent with a claim of medical negligence of malpractice. But this is insufficient. *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (cleaned up)). Plaintiff has neither alleged nor plausibly implied that Dr. Dory's misdiagnosis was the result of lack of skill or negligence.

Finally, Plaintiff has not stated any claim for failure to protect.

> [T]o state a viable failure-to-protect claim under the Fourteenth Amendment, a pretrial detainee must allege: (1) the defendant made an intentional decision regarding the conditions of the plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's inaction obvious; and (4) the defendant, by not taking such measures, caused the plaintiff's injuries.

*Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022). Plaintiff has done nothing more than allege that he was injured by another inmate then vaguely assert that a handful of correctional officers should be held responsible. Most importantly, he has not alleged that any of the Defendants had any reason to know that he was in

harm's way.

**IT IS THEREFORE ORDERED:**

1. Plaintiff's Motion to Request Counsel (#4) is DENIED.

2. Pursuant to its review, the Court finds that Plaintiff's Complaint states a claim for objectively unreasonable medical care, in violation of the Fourteenth Amendment, as well as a state law claim for negligence, against Defendant nurses Mandy, Stacy, and Hannah. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

3. The Clerk is directed to DISMISS all other Defendants from this case.

4. The Clerk is directed to effect service of process on nurses Mandy, Stacy, and Hannah pursuant to the Court's standard procedures.

5. This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

6. The Court will attempt service on Defendants by mailing

waivers of service to them. Defendants have sixty (60) days from the date the waiver is sent to file an answer. If Defendants have not filed answers or appeared through counsel within ninety (90) days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an Order setting discovery and dispositive motion deadlines.

7. With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8. Defendants shall file an answer within sixty (60) days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this opinion. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

9. This District uses electronic filing, which means that, after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to defense counsel copies of motions and other papers that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled, unless they are attached to and the subject of a motion to compel. Discovery does not begin until defense counsel has filed an appearance and the Court has entered a Scheduling Order, which will explain the discovery process in more detail.

10. Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

11. Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

12. If a Defendant fails to sign and return a waiver of service to the Clerk within thirty (30) days after the waiver is sent, the

Court will take appropriate steps to effect formal service through the U.S. Marshal Service on that Defendant and will require that Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

13. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

ENTERED October 7, 2026.

s/ *Sue E. Myerscough*

**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**